# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MORRIS, JUETTEN, and MURDOUGH
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Sergeant First Class FREDDERICK V. NORMAN**
**United States Army, Appellant**

ARMY 20230498

Headquarters, Eighth Army
Matthew S Fitzgerald, Military Judge
Colonel Rebecca K. Connally, Staff Judge Advocate (pretrial)
Lieutenant Colonel Cinnamon J. Chielens, Acting Staff Judge Advocate (post-trial)

For Appellant: Captain Emily R. Ittner, JA (argued); Colonel Philip M. Staten, JA; Lieutenant Colonel Autumn R. Porter, JA; Major Robert M. Luyties, JA; Captain Emily R. Ittner, JA (on brief); Colonel Philip M. Staten, JA; Lieutenant Colonel Robert M. Luyties, JA; Captain Amir R. Hamdoun, JA; Captain Emily R. Ittner, JA (on reply brief).

For Appellee: Captain Melissa D. Zigrang, JA (argued); Colonel Richard E. Gorini, JA; Major Marc B. Sawyer, JA; Captain Alex J. Berkun, JA (on brief).

10 December 2025

-----------------------------------
MEMORANDUM OPINION
-----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

MURDOUGH, Judge:

Over the course of three prosecutions, the appellant was charged and convicted twice, once pursuant to his plea and once contrary to his plea, for the same offense. The government's justification for the third and final prosecution was that appellant failed to comply with his promise to plead guilty in the second proceeding. We disagree and set aside the finding and sentence.

A general court-martial consisting of an enlisted panel convicted appellant, contrary to his pleas, of one specification of violating a lawful general regulation, in

violation of Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892 [UCMJ]. The panel sentenced appellant to 101 days of confinement, to be restricted for 60 days to the limits of Camp Humphreys, Republic of Korea, and to be reduced to the grade of E-6. Appellant received 101 days of pretrial confinement credit and four additional days of judicially-awarded credit.

Appellant raises two assignments of error: first, that the military judge erred when he ruled that the convening authority properly withdrew from a prior plea agreement, and second, that his third and final prosecution violated his protections against former jeopardy.[1]

We agree with appellant on both assignments of error, set aside the guilty finding and sentence, and dismiss the affected charge and specification.[2]

## BACKGROUND

*A. Norman I and the plea agreement*

At all relevant times, the appellant was stationed in the Republic of Korea and subject to the general court-martial convening authority (GCMCA) of the Commanding General, Eighth Army. For a brief period in 2021, the appellant was in a relationship with a junior enlisted soldier who would come to be identified in the record as "AV2." AV2 alleged that appellant sexually assaulted her on or about 9 April 2021. On 29 June 2022, the GCMCA referred to a general court-martial charge alleging three violations of Article 120, UCMJ (the AV2 sexual assault charge), and a second charge alleging a single specification in violation of Article 92. This charge alleged that the appellant violated paragraph 4-14 of Army Reg. 600-20, Army Command Policy (24 July 2020), also on or about 9 April 2021, by fraternizing with AV2, or "wrongfully creating a clearly predictable perception of undue familiarity" between AV2 and himself.

---

[1] Our grant of oral argument slightly rephrased the appellant's original assignment of error, which asserted that the successive prosecution violated both his due process rights and his right against self-incrimination. Appellant's self-incrimination argument was an attenuated assertion that, after pleading guilty in one court-martial, the government impermissibly used statements he made against him in the successive court-martial – this argument has no support in the record. Additionally, the majority of the appellant's due process argument on brief was, in actuality, a former jeopardy argument.

[2] Because of our decision on the assigned issues, we do not address the matters that the appellant personally submitted pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

The appellant was arraigned on these charges and specifications before a general court-martial (*Norman I*). After pretrial litigation, AV2 declined to further participate shortly before trial on the merits was scheduled to begin.

The GCMCA and appellant then entered into a plea agreement. Pursuant to the plea agreement, the GCMCA would withdraw the charges and specifications from the general court-martial and would refer only the fraternization specification to a summary court-martial, at which the appellant agreed to plead guilty. Per the agreement, the withdrawn sexual assault specifications were dismissed without prejudice, "to ripen into prejudice upon announcement of sentence at a Summary Court-Martial." There were no other material terms of the plea agreement.

On 22 February 2023, pursuant to the plea agreement, the GCMCA withdrew the charges and specifications from the general court-martial, terminating the proceedings in *Norman I* prior to assembly. He dismissed the AV2 sexual assault charge without prejudice and referred the fraternization charge and its specification to a summary court-martial (*Norman II*).

*B. Norman II*

The summary court-martial convened on 16 March 2023. Appellant pled guilty to the Article 92, UCMJ, violation; the summary court-martial found him guilty pursuant to his plea and sentenced him to reduction to the grade of E-6, a reduction of one pay grade. The appellant's trial defense counsel, who had represented him in *Norman I* and co-signed the plea agreement, was present at the summary court-martial.[3] The summary court-martial did not produce a recording or transcript, verbatim or otherwise. The only official record of the proceedings is the Department of Defense [DD] Form 2329.[4]

On 23 March 2023, trial defense counsel submitted clemency matters to the GCMCA pursuant to Rule for Courts-Martial [R.C.M.] 1306(a), requesting the GCMCA disapprove or suspend the *sentence* of the summary court-martial. In his

---

[3] In matters submitted pursuant to R.C.M. 1306, discussed further *infra*, the appellant's trial defense counsel asserted that he was only present because the trial counsel insisted on being present for the summary court-martial as well, in contravention of Army Reg. 27-10, Legal Services: Military Justice. The military judge in ruling on the motion noted this allegation but did not find this as fact. We do not adopt it either, nor do we need to resolve the issue of whether or why a government counsel was present for *Norman II*. This same defense counsel would later rejoin the defense team for *Norman III*.

[4] Neither R.C.M. 1112 nor R.C.M. 1305 require an audio recording or verbatim transcription of summary court-martial proceedings.

memorandum, the defense counsel summarized what had transpired. First, he described appellant's version of events: "he had met [AV2] in civilian clothes off base at a local club. . . . and she represented that she was a [sergeant]." Trial defense counsel continued, "Approximately 29 March 2021, [appellant] discovered that she was actually a [specialist]. She represented that she would be going to her basic leadership course soon, and would become a [sergeant] shortly thereafter, so he did not immediately break it off. However . . . on 9 April 2021, he found out that she was not going to attend BLC soon and he ended the relationship." Next, defense counsel stated that appellant, in presentencing, had called three character witnesses who testified that "in their opinion, if [appellant] had known [AV2's] rank from the start, he would have never gotten involved with her." Defense counsel concluded that appellant's punishment did "not fit the crime for which [appellant] ple[]d guilty to and [was] not supported by the evidence that was presented at the [summary court-martial]." (emphasis omitted). Additionally, trial defense counsel asserted a host of "substantial procedural errors which prejudiced the proceedings against [appellant]," including the consideration of inadmissible evidence and *ex parte* communications between the summary court-martial officer and a government paralegal. He reiterated the request to disapprove the sentence.

The paralegal who was present and supported the summary court-martial prepared a memorandum for record (MFR), also dated 23 March 2023, in which he recounted the unsworn statement the appellant provided at presentencing. In relevant part, the paralegal MFR asserts the appellant:

> read from AR 600-20, para[graph] 4-14b(1)-(5), after each subparagraph briefly explaining why he did not violate each respective element of fraternization. He then read para[graph] 4-12c(2)(b) and stated that when he found out that [AV2] was not an NCO, this was a "change in status" by the definition of the regulation and he complied with the requirement in that subparagraph to terminate the relationship . . . .

The paralegal's MFR notes that the summary court-martial officer had "one follow-up question." The court-martial "asked whether [appellant] was made aware of the true rank of [AV2] before or after some particular date, and [appellant], after looking through the packet of evidence, replied 'after.'" The paralegal could not recall the specific date discussed.

On 5 April 2023, the GCMCA took action pursuant to R.C.M. 1306(b) on the findings and sentence of *Norman II*. His annotation on the DD Form 2329 states, "Based on post-trial matters submitted, I set aside the finding of the Summary Court-Martial and direct a rehearing in accordance with R.C.M. 1306(b)(2)(B)(ii)

4

and R.C.M. 810. In accordance with the post-trial matters, a new [summary court-martial officer] will be appointed."

A week later, on 12 April 2023, the staff judge advocate (SJA) recommended the GCMCA withdraw from the 16 February plea agreement, quoting in part R.C.M. 705(e)(4)(B).[5] She asserted, nonspecifically, that the appellant "ha[d] not substantially performed any of the promises contained in the plea agreement dated 16 February 2023;" and "[t]here is probable cause to believe that [appellant] engaged in serious misconduct on 17-18 March 2023."[6] The GCMCA approved and executed that recommendation.

*C. Norman III*

Prosecution began anew on 31 May 2023 when an accuser preferred a new set of charges against the appellant on a new charge sheet. This included seven specifications alleging sexual assault in violation of Article 120, UCMJ. Three of the specifications, alleging sexual assault against AV2, were virtually identical to those in *Norman I*. The remainder alleged sexual assaultS against AV1and AV3. The preferred charges also included a fraternization specification identical to the one referred to both *Norman I* and *Norman II*, alongside other charges and specifications. Following an Article 32 preliminary hearing, the GCMCA referred these charges to a general court-martial on 20 June 2023 (*Norman III*).

After referral, appellant moved to dismiss all charges and specifications related to AV1 and AV2 for a variety of reasons, including speedy trial, unlawful command influence, and prosecutorial misconduct. He also sought dismissal of the specifications related to AV2 on the basis of double jeopardy. As part of that argument, he asserted the GCMCA was not legally permitted to withdraw from the plea agreement in *Norman II*.

The military judge denied the defense motion in its entirety. In pertinent part, he concluded that the appellant's guilty plea at *Norman II* was improvident, due to matters he presented in mitigation and extenuation at both the summary court-martial and in the R.C.M. 1306(a) matters submitted on his behalf. The military judge concluded, "it is certainly conclusive that a military judge would not have found the accused provident if he were before a military judge." From this

---

[5] The portion of the rule that the SJA quoted states that the convening authority may withdraw from a plea agreement "before substantial performance by the accused of promises contained in the agreement[.]" R.C.M. 705(e)(4)(B)(i).

[6] This "serious misconduct" related to a sexual assault allegation involving another alleged victim who would become known as AV3 in the record, discussed further *infra*.

conclusion, the military judge further concluded that the GCMCA had properly withdrawn from the *Norman II* plea agreement, because the appellant had failed to substantially comply with his only obligation – to plead guilty (by implication, providently).

The military judge further ruled that the fraternization specification pertaining to AV2 was not barred by double jeopardy because the GCMCA had set aside the guilty finding before it became final under Article 44, UCMJ.

The appellant pled not guilty to all charges and specifications and proceeded to trial on the merits before an enlisted panel. The members found the appellant not guilty of all charges and specifications, except the Article 92, UCMJ, fraternization specification, identical to the specification to which he had pled guilty in *Norman II*.

## LAW AND DISCUSSION

*A. The Military Judge Erred in Concluding Appellant was Improvident in Norman II*

The military judge ultimately concluded that the government could withdraw from the plea agreement and that *Norman III* was not jeopardy-barred. The foundation of this ruling was his determination that appellant's plea in *Norman II* was improvident, constituting a material breach of the plea agreement.

We review a military judge's ruling on a motion to dismiss for an abuse of discretion. *United States v. Shelby*, 85 M.J. 292, 294 (C.A.A.F. 2025) (citation omitted). The military judge abuses his discretion when, *inter alia*, he bases his ruling on findings of fact not supported by the record, uses incorrect legal principles, or ignores important facts. *Id.* (citation omitted). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous." *United States v. Lloyd*, 69 M.J. 95, 99 (C.A.A.F. 2010) (internal quotation marks omitted) (citation omitted).

In this instance, the military judge made multiple factual errors in his ruling. First, he misquoted the trial defense counsel's R.C.M. 1306 submission. The judge's ruling states the defense counsel "assert[ed] that AV2 had misrepresented her rank to the accused up to 9 April 2021 . . . ." The R.C.M. 1306 memorandum says, "Approximately 29 March 2021, [appellant] discovered that she was actually a [specialist]." Moreover, the military judge stated "[appellant] was charged with fraternizing with AV2 on a *very specific date, 9 April 2021* . . . ." (emphasis added). He was not; he was charged with violating the prohibition against fraternization "*on or about* 9 April 2021." (emphasis added). These two factual errors became the linchpin of his determination that the appellant had set up matters inconsistent with

his guilty plea.[7] In other words, the military judge ignored the important fact that the defense counsel *conceded* that, from approximately 29 March until 9 April 2021, the appellant knew AV2's true rank but nonetheless persisted in the prohibited relationship.[8]

Additionally, the military judge applied incorrect legal principles when he failed to give appropriate deference to the findings of the summary court-martial officer in *Norman II*, when he concluded "by a preponderance of the evidence that [appellant] breached the plea agreement by failing to plead guilty . . . ." He correctly noted that *in general*, prior to reinstituting withdrawn or dismissed charges, the government was required to prove, by a preponderance of evidence, that the appellant had breached the plea agreement. *E.g., United States v. Smead*, 68 M.J. 44, 62 (C.A.A.F. 2009) (citing R.C.M. 705(b) discussion).[9] However, he did not apply the correct legal standard specifically for reviewing the providence of a guilty plea. *See also United States v. Merritt*, 72 M.J. 483, 486 (C.A.A.F. 2013) (citation omitted) (we review de novo the question of whether the military judge applies the proper legal principle in denying a motion to dismiss).

---

[7] The military judge made these factual assertions in the "analysis and conclusions of law" portion of his ruling. While he correctly quoted the relevant documents in the "findings of fact" portion of his ruling, the latter (incorrect) factual assertions formed the basis for his legal conclusions. "[W]e do not think it important *where* in the military judge's ruling the factual finding was located. What matters more is whether the military judge *relied* on the fact in reaching a legal conclusion." *United States v. Lewis*, 78 M.J. 602, 615 (Army Ct. Crim. App. 2018) (emphasis in original), aff'd 78 M.J. 447 (C.A.A.F. 2019).

[8] The scant factual record of what actually was said at the summary court-martial magnifies the significance of these errors in factual findings. Though, as discussed *infra*, the government bore the burden to establish that the appellant had breached a material term of the plea agreement, the government called no witnesses who were present for *Norman II*. Instead, to establish what had transpired, the government relied on the trial defense counsel's post-trial submission and the paralegal MFR, both written on the same day, a week after the summary court-martial, a sum total of six pages in the record. In his ruling, the military judge put more emphasis on the R.C.M. 1306 submission than the paralegal MFR.

[9] The text of and discussion to R.C.M. 705(b) remain unchanged since *Smead* was decided. This part of the trial judge's ruling encompassed both the fraternization specification as well as the reinstitution of the AV2 sexual assault specifications. We do not address that portion of his ruling; all error in the re-preferral and re-referral of those specifications, purportedly dismissed with prejudice pursuant to the plea agreement in *Norman I-II*, is harmless because the panel in *Norman III* acquitted the appellant of those specifications.

When trial judges find themselves in the unusual position of reviewing a prior court-martial's acceptance of a guilty plea, they use the same standard as appellate courts do. That is, the abuse of discretion standard and whether there is a "'substantial basis'" in law and fact to question the plea. *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008) (quoting *United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991)). Thus, while the trial judge may conduct independent factfinding and apply the preponderance of evidence standard to questions of whether an accused breached some particular term of a plea agreement, *Smead*, 68 M.J. at 62, when the term at issue is the promise to plead guilty itself, the trial judge cannot merely substitute their own judgment for that of the court-martial that actually received and accepted the plea.

That occurred here. The military judge noted that a summary court-martial officer must question the accused to establish a "factual basis for the plea" and resolve any statements that may be inconsistent with or call into question the providence of the plea. R.C.M. 910(e), (h) (incorporated by reference in R.C.M. 1304(b)(2)(D)). But on a scant record, and with multiple factual errors, the military judge assumed that had not occurred, likening the proceedings to an *Alford* or *nolo contendere* plea.[10] Then, he substituted his own judgment for that of the summary court-martial officer when he wrote: "Using *my knowledge, experience, and understanding* . . . it is certainly conclusive that a military judge would not have found the accused provident if he were before a military judge." (emphasis added).

The military judge made factual findings unsupported by the record and applied incorrect legal standards to his ruling. His fundamental conclusion that the appellant was improvident in *Norman II*, which formed the basis for the remainder of his ruling now at issue on appeal, was an abuse of discretion and error.

### B. *The Convening Authority Improperly Withdrew From the Norman I-II Plea Agreement*

The convening authority did *not* err when he set aside the findings and sentence of the summary court-martial in *Norman II*, and by extension neither did the military judge when he reached the same conclusion. Under Article 60b, UCMJ, and R.C.M. 1306(b), the convening authority may set aside findings, disapprove a sentence in whole or in part, and either dismiss charges or direct a rehearing. Historically, a convening authority could lawfully set aside findings, dismiss charges or order rehearings, and disapprove, commute, reduce, or suspend sentences, for any reason or even no reason at all. *See, e.g., United States v. Nassey*, 5

---

[10] Both an *"Alford* plea,"* named after the case of *North Carolina v. Alford*, 400 U.S. 25 (1970), and a *nolo contendere* or "no contest" plea, occur when a defendant does not admit guilt but waives his right to a trial at which the prosecution would have to prove his guilt. Neither are permitted in the military. *See* R.C.M. 910(a).

U.S.C.M.A. 514, 520-22, 18 C.M.R. 138, 144-46 (1955) (applying and interpreting Article 64, UCMJ (1950)). Though the modern iteration of the applicable statues and rules have significantly constrained this authority in special and general courts-martial,[11] R.C.M. 1306(b) represents a residuum of this plenary authority at summary courts-martial.

In this case, appellant's trial defense counsel not only submitted matters in mitigation (not, as the trial judge in *Norman III* held, asserting a defense), he also asserted, in his words, "substantial procedural errors." Whether trial defense counsel was correct is not before us; the convening authority appeared to agree, and he exercised his R.C.M. 1306(b) authority to set the proceedings aside and direct a rehearing, presumably one not tainted by the same errors.

But the convening authority was not permitted to withdraw from the plea agreement. The convening authority, based on the advice of the SJA, withdrew from the plea agreement for potentially two reasons – the appellant's failure to substantially perform "any" of his promises and additional misconduct. The military judge in *Norman III* acknowledged that additional misconduct, by itself, would not be a proper basis for withdrawal.[12] However, he concluded that the first proffered justification was lawful. Although phrased as failure to perform "any" promise, as the military judge observed, appellant had only one obligation under the agreement – to plead guilty. He agreed with the SJA's implication that appellant had not (providently) pled guilty. As we have held, the military judge's determination that appellant failed to live up to this promise was error, thus his ruling that the convening authority was permitted to withdraw from the agreement on this basis was likewise erroneous. The government remained bound by the plea agreement.

Ordinarily, we might resolve this case only on the first assignment of error without reaching the question of former jeopardy.[13] But if we were to rule solely on the military judge's erroneous ruling, we would have multiple remedial options available. We may be inclined to grant relief by, for example, holding the government to its end of the agreement, *i.e.*, setting aside the findings and authorizing a rehearing, but only at a summary court-martial. On the other hand, if

---

[11] *See, e.g.*, UCMJ art. 60a; R.C.M. 1109 (prohibiting the setting aside of findings and curtailing the ability to act upon sentences in many cases).

[12] The plea agreement did not include a provision requiring the appellant not to commit future misconduct.

[13] *Cf. United States v. Serianne*, 69 M.J. 8, 11 (C.A.A.F. 2010) ("a court need not resolve a constitutional question, even if properly presented, 'if there is also present some other ground upon which the case may be disposed of.'" (quoting *Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 346-48 (1936) (Brandeis, J., concurring)).

we find a former jeopardy violation, this avenue would be foreclosed to us. Thus, we must address the second assignment of error.

### C. *Former Jeopardy Barred Retrial for the Article 92 Specification at Norman III*

As a threshold matter, the prohibition against former jeopardy, implemented through Article 44 of the UCMJ and R.C.M. 907(b)(2), applies to summary courts-martial. The statutory text of Article 44, UCMJ, refers to all courts-martial, without distinguishing summary courts-martial from special or general courts-martial. And R.C.M. 907(b)(2)(C) expressly refers to summary courts-martial. Our superior court further describes Article 44, UCMJ, and its implementation in R.C.M. 907(b)(2) as the means by which the constitutional protections of the Double Jeopardy Clause are implemented. *United States v. Rice*, 80 M.J. 36, 40 n.8 (C.A.A.F. 2020) ("The general bar on successive prosecutions is made particular in the military through Article 44, UCMJ . . . and [R.C.M]. 907(b)(2)(C)."); *see also United States v. Rosendahl*, 53 M.J. 344, 347 (C.A.A.F. 2000) (noting that the UCMJ and *Manual for Courts-Martial* implement the same constitutional Double Jeopardy protections "[i]n the military[] as in civilian life . . . .").[14]

For one prosecution to bar a successive prosecution, jeopardy must both attach[15] and terminate. *United States v. Easton*, 71 M.J. 168, 172 (C.A.A.F. 2012) (citing *Richardson v. United States*, 468 U.S. 317, 325 (1984)); *see also* UCMJ art. 44(b) (noting that, in cases resulting in conviction, jeopardy does not terminate until "the finding of guilty has become final after review of the case has been fully completed."). For this reason, prohibitions against former jeopardy do not bar multiple trials, even when jeopardy has attached, in cases of a properly authorized rehearing, *see, e.g., United States v. Ivory*, 9 U.S.C.M.A. 516, 521-22, 26 C.M.R. 296, 301-02 (1958) (rehearing properly ordered by convening authority), or mistrials under certain circumstances. *See, e.g., United States v. Diangelo*, 31 M.J. 135, 136-37 (C.M.A. 1990); *Easton*, 71 M.J. 168; *see also* R.C.M. 915(c)(2) (discussing when

---

[14] While at least one circuit court has determined that summary court-martial prosecutions are not trials for purposes of double jeopardy, we find this logic unpersuasive. *Bolton v. Dep't of the Navy Bd. for Corr. of Naval Records*, 914 F.3d 401, 410 (6th Cir. 2019) (analogizing *Middendorf v. Henry*, 425 U.S. 25 (1976), to conclude that summary courts-martial are not criminal prosecutions for the purposes of the Double Jeopardy Clause). *Middendorf* was settled on the premise that summary courts-martial are not "criminal prosecution[s]" within the context of the Sixth Amendment. 425 U.S. at 34. Given the specific statutory language of Article 44(b), UCMJ ("No proceeding in which an accused has been found guilty by a court-martial . . . is a trial in the sense of this article until the finding of guilty has become final after review . . . ."), we find *Middendorf*, and therefore *Bolton*, distinguishable.

[15] *See* R.C.M. 907(b)(2)(C)(i) (discussing when jeopardy attaches to courts-martial).

mistrial permits and prohibits further proceedings).[16] However, the critical distinction in these scenarios is that the "rehearing is but a continuation of the former proceeding . . . ." *United States v. Smith*, 16 U.S.C.M.A. 274, 276, 36 C.M.R. 430, 432 (1966) (internal quotation marks omitted) (citation omitted). In other words, while jeopardy attaches at "the initial hearing on the merits," it does not terminate until the case "proceeds through appellate channels, and ends with affirmance of conviction or, in the event of reversal, *repetition* of the trial and review procedures *or dismissal* of the charges." *Id.* (emphasis added).

When the convening authority sets aside findings, he may *either* direct a rehearing or dismiss the charges, not both. *See, e.g.*, UCMJ art. 60b(a)(1); R.C.M. 1306(b)(2). Dismissal of a specification terminates the proceeding with respect to that specification. *See* R.C.M. 401(c)(1), 907(a). "[I]f at any time after the commencement of the initial hearing on the merits the convening authority dismisses the charges, they cannot be reinstituted without the consent of the accused." *Smith*, 16 U.S.C.M.A. at 276, 36 C.M.R. at 432.

That occurred here. The fatal act for the government in terms of jeopardy was not the setting aside of the findings in *Norman II*, or even the improper withdrawal from the plea agreement, but what happened after. The record is bereft of any indication as to what became of the original charge sheet following *Norman II*. The record only indicates that the convening authority set aside the guilty finding, ordered a rehearing, and then purported to withdraw from the plea agreement. The final disposition of the fraternization charge and specification originally referred to *Norman I* and then re-referred to *Norman II* appears nowhere in the record. However, we can infer that it was dismissed because, instead of re-referring the same specification on the original charge sheet, the government preferred an identical specification on 31 May 2023 on a new charge sheet alongside multiple other charges and specifications.[17]

*Norman III* was not a continuation of the prosecution that began in *Norman I*. It was a completely new prosecution with a new charging instrument. The appellant had already been subject to prosecution for the same fraternization violation in *Norman II*, where not only did trial begin but was completed, verdict rendered and sentence adjudged. Jeopardy attached at *Norman II*, and the GCMCA, though he initially directed a rehearing, presumptively dismissed the charge and specification.

---

[16] A different scenario arises when the original proceeding lacked jurisdiction to hear the case; in this situation jeopardy never attaches. *See United States v. Driskill*, 84 M.J. 248, 254 (C.A.A.F. 2024); R.C.M. 907(b)(2)(C)(iv). In this case, it is undisputed that all three courts-martial had proper jurisdiction over both the appellant and the alleged offenses.

[17] If the government intended to preserve the original proceeding, it could have preferred "additional charges" or otherwise explained its actions on the record.

Then the same GCMCA referred an identical specification for the same offense to a different court-martial, at which appellant was tried and convicted – "multiple prosecutions for the same misconduct" – in violation of his protection against former jeopardy. *Rice*, 80 M.J. at 40 (internal quotation marks omitted) (citation omitted).

Because *Norman III* violated the appellant's protection against former jeopardy, the only appropriate remedy is to dismiss the charge and its specification.

## CONCLUSION

The guilty findings and sentence are SET ASIDE.[18] Specification 2 of Charge II and Charge II are DISMISSED. We order restored all rights, privileges, and property of which the appellant has been deprived by virtue of these proceedings.

Senior Judge MORRIS and Judge JUETTEN concur.

FOR THE COURT:

JAMES W. HERRING, JR.
Clerk of Court

---

[18] The Findings Worksheet of the Statement of Trial Results, incorporated into the judgment, is amended to remove the indication that the appellant was convicted, with exceptions, of Specification 1 of Charge 1. He was acquitted of this specification.